SATULOFF BROTHERS, INC., Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24441.)

Court of Claims, June 12, 1939.

*Halpern & Friedman* [*Philip Halpern*, of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*John A. Behan, Assistant Attorney-General*, of counsel], for the defendant.

RYAN, J.  The claimant contracted to sell butter and eggs to the State of New York, deliveries to be made as ordered by the State institutions.   The contract provided:

" Inferior Deliveries.

" Where deliveries are of a grade inferior to the specifications, and the fact is established that shipment is of an inferior quality, or grade than that called for in the specifications, the contractor will not be allowed to replace delivery.   The agency will be authorized to reject the delivery and to make full replacement by open market purchase, the difference in cost, if any, to be charged to the account of the contractor."

The contract further provided:

" Eggs classified as inferior on delivery will be rejected at the expense of the contractor. Replacement will not be permitted. Three rejections substantiated by the Department of Agriculture and Markets will result in cancellation of contract, and the Contractor will be disqualified from future awards."

Under date of August 16, 1934, the State, through its division of Standards and Purchase, notified claimant by telegram: " Your contract for eggs cancelled because of inferior deliveries."

Thereafter the State continued to order butter from the claimant and deliveries of butter were made to various State institutions for which claimant has not been paid balances as follows: August 25, 1934, Marcy Hospital, $591.64; September 29, 1934, Utica State Hospital, $551.25; September 29, 1934, Gowanda State Hospital, $86.40; September 4, 1934, Rochester State Hospital, $585.24; October 4, 1934. Rochester State Hospital, $1,998.25. The foregoing balances total $3,813.38 and comprise the greater part of claimant's present demand which is in the sum of $4,551.57. The remainder of claimant's demand, being the sum of $738.19, represents unpaid balances on eggs delivered.

On the trial the Attorney-General asserted that the State has expended the sum of $3,871.00 in purchasing eggs from others after it had notified claimant that its contract was cancelled. The claimant stipulated the amount but did not concede that said sum was properly expended in open market purchase as provided by the contract or as required by the sales act. On the State's part the Attorney-General admitted a balance of $680.57 due to the claimant. The claimant proved its *prima facie* case and rested. The Attorney-General moved for dismissal and the motion was denied. The court then received testimony offered by the State in support of its position that there were three rejections of eggs substantiated by the Department of Agriculture and Markets. This procedure, adopted to facilitate the trial, was followed over the objection of the attorney for the claimant upon which objection the court reserved decision.

The objection was based upon the argument that the State's demand for a credit of $3,871.00 was essentially a counterclaim. Admittedly no counterclaim has been pleaded in this case.

The Rules of the Court of Claims provide as follows:

Rule 2. The state is not required to answer a claim and all allegations in the claim are treated as denied.

Rule 14. Where a counterclaim is necessary the attorney-general must plead the counterclaim in conformity with the provisions relating to claims as far as applicable.  *   *   *

Rule 26. A counterclaim is admitted unless a reply is filed and served as prescribed by these rules. * * *

In the case of *Nash* v. *Weidenfeld* ([1899] 41 App. Div. 511; affd., 166 N. Y. 612) the court said:

"But the contract contains a warranty that the property delivered shall be of a certain quality; and where such a contract is made, the right to recover damages for a breach of it survives the acceptance of the property. Such a right, however, is not a defense to the action, after acceptance of the goods, but is a counterclaim for the breach of the contract of warranty (*Norton* v. *Dreyfuss*, 106 N. Y. 90); and to enable the party complaining of it to recover upon it, it is necessary that he should allege not only the facts constituting the breach of warranty, but also the fact that he has suffered damage on account of it," and, further, "where one is called upon to set up an answer which is available only as a counterclaim, he is bound to plead it in explicit terms, and not leave it to inference whether he intends or not so to plead it (*Rice* v. *Grange*, 131 N. Y. 149); and if he fails to plead it as it ought to be pleaded, and the objection is properly taken at the trial, he cannot complain if the court holds him to the pleading which he pretends to make."

This principle that a counterclaim based upon breach of warranty must be pleaded as such continues to be recognized. (*Regina Co.* v. *Gately Furniture Co.*, [1916] 171 App. Div. 817.) In the recent case of *Bond Electric Corp.* v. *Gold Seal Elec. Co., Inc.* ([1936] 271 N. Y. 461) Judge LEHMAN said:

"The measure of damages for breach of warranty is the difference between the value of the goods delivered and the value the goods would have had if they had conformed to the contract. If the plaintiff has paid the full purchase price it could recover these damages from the defendants. It is entitled to the damages even though it has not paid the full purchase price, though then the unpaid purchase price could be offset by the defendants against the damages which the plaintiff would otherwise recover. Damages and purchase price would, none the less, represent independent causes of action."

However, the Attorney-General argues that because of the provision of the contract above quoted to the effect that "The agency will be authorized to reject the delivery and to make full replacement by open market purchase, the difference in cost, if any, to be charged to the account of the contractor" the State is in a different position than one asserting a breach of warranty.

But obviously even under this clause of the contract the State has the affirmative of establishing that its replacements were

actually made by open market purchase and at what cost and the claimant is entitled to have the facts in respect thereto pleaded so that it may make reply and prepare itself to meet the issue. It must be borne in mind that the State's claim is entirely unliquidated. The clause under discussion does not authorize the State to arbitrarily determine the amount in which the claimant may be liable to it. No better proof that the nature of the State's demand is a counterclaim could be found than in the record of the testimony taken before this court on the State's case and over objection as above noted. This testimony the claimant's attorney moved to strike out. The motion must be granted because no counterclaim has been pleaded.

The determination of this motion favorably to the claimant renders it unnecessary for us to pass upon the remaining questions, viz.:

1. That the defense has not established the damages alleged, and
2. That the defense has not established that the contract was breached by the claimant rendering to the State the right to cancel it.

An order should be entered granting the claimant's motion to strike out all testimony admitted by the court as part of the State's defense, together with a direction for judgment in favor of the claimant for the full amount demanded, viz., $4,551.57 with interest from December 1, 1934, the date of the last payment on account made by the State.

GIBBS, J., concurs.